UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-282-F

| | | |
|---|---|---|
| SHERRY L. WYATT, | ) | |
|        Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED AIRLINES, INC., | ) | |
|        Defendant. | ) | |
| _____ | ) | |

This matter is before the court on United's motion to dismiss [DE-11]. The case presents the issue of whether a retired airline employee must submit disputes regarding the retiree's pass travel benefits to the airline grievance procedure and arbitration under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. The court concludes that Wyatt must do so and that her request for injunctive relief to compel arbitration is premature at this stage. Accordingly, the court does not have subject matter jurisdiction, United's motion to dismiss is ALLOWED and the case is DISMISSED.

**FACTUAL AND PROCEDURAL BACKGROUND**

Wyatt initiated this suit in North Carolina state court, bringing state law claims for breach of contract, fraud, and declaratory judgment. United timely removed the case to this court on the basis of diversity jurisdiction. Notice of Removal [DE-1]. Subsequently, Wyatt amended her complaint to include a claim for an injunction compelling arbitration "[i]n the event that it is determined Plaintiff's preceding claims are subject to mandatory arbitration under the Railway Labor Act . . . ." Am. Compl. [DE-9] ¶ 60.

Wyatt's claims are predicated on United's changes to her retirement "pass travel benefits."[1]  Pass travel benefits allow current and retired employees to travel at little or no cost, typically on a space available basis.  Wyatt was hired on August 10, 1966 and at the time she joined United the retiree benefit package included pass travel benefits at the highest boarding priority for retirees with at least twenty-five years of service.  This "super" priority boarding status meant these retirees could board before other retirees with less years of service or current employees wishing to exercise their pass travel benefits.  These benefits were memorialized in a Collective Bargaining Agreement between the Association of Flight Attendants ("AFA") and United.  Wyatt states that she "was induced to accept the offer of employment from United by the promise [of these retiree pass travel benefits]." Resp. [DE-13] at 2.

With some modifications not relevant here, this pass travel policy was part of the Collective Bargaining Agreement when Wyatt retired in 2003, with over thirty-seven years of experience with United.  In 2002, Wyatt received a letter from United executive Glenn Tilton that encouraged her to retire within a year and emphasized that she would receive the full retirement package, including the unlimited pass travel benefits with the highest boarding priority.  According to Wyatt, the super boarding priority is an important benefit because a particular employee or retiree may only use the benefit if seats are available on the desired flight. Thus, the priority status afforded retirees with at least twenty-five years experience means those

---

[1] United's briefing in this case carefully avoids the term "benefits" when referring to the pass travel program.  Instead, it refers to the program as a "privilege," presumably because its position is that the pass travel program is not a vested retirement benefit that United is obligated to maintain without change. *See Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 363-64 (1980) (explaining "vesting" provision under ERISA).  In light of the discussion below, the court has no occasion to address this issue.  The court uses the term "benefit" in this order solely for ease of reference and because that is the term Wyatt uses in her complaint to describe the program.

2

retirees are more likely to be able to use their pass travel benefits on popular, heavily booked flights. Wyatt indicates that she based her retirement decision at least in part on the assumption that United would not change her pass travel benefits while she was in retirement.

When United merged with Continental Airlines in 2010, it changed the retiree pass travel policy. The new policy, which applies to all current employees and retirees, provides each employee/retiree with eight one-way passes per year at the highest boarding priority. Unused passes also carry over to following years. The new policy eliminated the "super" priority boarding status for retirees at United with at least twenty-five years of service and the new policy actually preferences active employees in terms of boarding priority. As a result of higher demand and United's method of booking flights, Wyatt indicates that the loss of super priority boarding renders the pass travel benefits "significantly-less advantageous" to retirees with twenty-five years or more experience.

Wyatt alleges that the changes to the pass travel benefits policy constitute a breach of United's Collective Bargaining Agreement with the AFA. Her fraud claim is predicated on United's purported false representations regarding the permanency of the pass travel program for current retirees. United maintains that the Collective Bargaining Agreement expressly permits it to change retirees' pass travel benefits, so long as it provides notice and an opportunity to object to the AFA.[2]

---

[2] It appears this notice and opportunity to be heard provision is more form than substance, as United has steadfastly refused to negotiate with the AFA regarding changes to the pass travel program. *See Santiago v. United Air Lines, Inc.*, 969 F. Supp. 2d 955, 958 (N.D. Ill. 2013).

3

## DISCUSSION

United moves to dismiss Wyatt's claims for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12 states that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Rule 12(b)(1) challenges to the court's subject matter jurisdiction can take one of two forms: (1) an argument that the complaint's allegations, taken as true, do not support subject matter jurisdiction (a "facial challenge" to jurisdiction); or (2) an argument that the jurisdictional allegations in the complaint are not true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Although United does not specify the form of its Rule 12(b)(1) argument, it is clear from its briefing that it launches a facial challenge to the court's jurisdiction. In such a case, the plaintiff is afforded "the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration." *Id.* at 192; *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). That is, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192.

As noted, Wyatt's claims implicate the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. The RLA provides in relevant part that

> "disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner up to and including the chief operating officer of the [airline]; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board . . . ."

§ 184. The Supreme Court has determined that this provision provides the airline arbitration boards with exclusive jurisdiction over all claims involving interpretation of RLA-governed

4

collective bargaining agreements. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261, 263 (1994); *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 304 (1989). Thus, if a plaintiff's claims are dependent on interpreting such a collective bargaining agreement, the claims are deemed "minor disputes" preempted by the RLA and the federal and state courts lack subject matter jurisdiction over them. *Consol. Rail*, 491 U.S. at 304; *United Transp. Union v. S.C. Pub. Ry. Cmm'n*, 130 F.3d 627, 627-28 (4th Cir. 1997). This is so because Congress has entrusted interpretation of the collective bargaining agreements to the arbitration boards, who have specialized knowledge and expertise regarding them. *See Pa. R.R. Co. v. Day*, 360 U.S. 548, 551 (1959). In addition, interpretation of the agreements by one centralized board promotes uniformity of interpretation and orderly resolution of disputes. *Id.*

In this case, three of Wyatt's claims require interpretation of the United-AFA Collective Bargaining Agreement and, accordingly, the court does not have subject matter jurisdiction over them. Wyatt's breach of contract claim is expressly pled as a breach of the collective bargaining agreement and therefore it requires interpretation of the relevant provisions of the agreement. Am. Compl. [DE-9] ¶¶ 33-41. Thus, it is a minor dispute preempted by the RLA. *See, e.g.*, *Consol. Rail*, 491 U.S. at 305 ("The distinguishing feature [of a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement."); *Pilkington v. United Airlines*, 112 F.3d 1532, 1539 (11th Cir. 1997).

Similarly, Wyatt's fraud claim also requires interpretation of the agreement. Wyatt's fraud claim alleges that United falsely represented that the pass travel benefits would not be modified during her retirement. The claim is based on United's various communications to Wyatt informing her that she could retire with full pass travel benefits, which Wyatt interpreted

5

as promises that these benefits would not be changed during her retirement. According to Wyatt, these representations were fraudulent because, at the time they were made, United believed the benefits were subject to change, but failed to inform her (and other employees) of that fact. *See* Am. Compl. [DE-9] ¶¶ 42-53. United's position is that the United-AFA Collective Bargaining Agreement expressly permits it to modify the pass travel program and thus none of its statements to Wyatt or other employees was fraudulent because the employees have always been on notice that the program is subject to change. Resolving this dispute requires interpreting the agreement, specifically whether it permits United to modify the pass travel program and whether the agreement sufficiently notified retirees that the benefits were subject to change. Thus, the fraud claim is also preempted. As United notes, a number of federal courts of appeals have dismissed similar state law fraud claims requiring interpretation of RLA-governed collective bargaining agreements. *See, e.g.*, *Pilkington*, 112 F.3d at 1539; *Kollar v. United Transp. Union*, 83 F.3d 124, 126 (5th Cir. 1996); *Allen v. United Transp. Union*, 964 F.2d 818, 821-22 (8th Cir. 1992); *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 562-63 (9th Cir. 1991).

The court also does not have jurisdiction over Wyatt's declaratory judgment claim. That claim requests a declaration "regarding whether United can unilaterally change promised retiree pass travel benefits for employees who have already retired." Compl. [DE-9] ¶ 55. As discussed above, resolution of this issue is dependent on interpreting the United-AFA Collective Bargaining Agreement. Accordingly, it is also preempted by the RLA. *Norris*, 512 U.S. at 261, 263.

Attempting to avoid this result, Wyatt argues that she is not an "employee" within the meaning of the RLA because she is no longer employed with United. The RLA governs

6

"disputes between an employee or group of employees and a[n] [airline]." 45 U.S.C. § 184. Although the statutory language does not expressly define the term employee to include retirees, *see* 45 U.S.C. § 151, Fifth,[3] the Supreme Court has done so. *Day*, 360 U.S. at 551-54. In *Day*, the Supreme Court considered whether an employee who initially raised his dispute through the internal grievance procedure but retired before presenting it to the arbitration board, is subject to the mandatory arbitration provisions of the RLA. *Id.* at 548-50. The Court explained that the policy justifications for mandatory arbitration (expertise of the board, uniformity of interpretation) apply with equal force whether the employee is active or retired. *Id.* at 551-52. Thus, the Court held that retirees are subject to the mandatory arbitration provisions "if the claim itself arises out of the employment relationship which Congress regulated." *Id.* at 552.

Wyatt argues that *Day* should be essentially limited to its precise facts, where the employment practice giving rise to the dispute occurred prior to the employee's retirement, but the employee retires before submitting to arbitration. Nothing in *Day* suggests that it should be so limited. Indeed, if the purpose of the Supreme Court's holding was to promote uniformity in interpretation of the collective bargaining agreements, that purpose is expressly undermined by Wyatt's interpretation of *Day*. Wyatt's reading would open the door to federal court in every case in which a retired United employee raises a dispute with United regarding changes to retirement benefits or "privileges" governed by the collective bargaining agreement, while all active employees would be restricted to the arbitration boards. That would hardly promote

---

[3] In fact, the statutory language defines employee as "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee . . . ." 45 U.S.C. § 151, Fifth. Because a retiree is not "subject to [the airline's] continuing authority to supervise . . . the rendition of service" the definition may be read to exclude retirees. Of course, this court is bound to follow *Day*.

7

Case 7:13-cv-00282-F   Document 15   Filed 08/13/14   Page 7 of 10

uniform interpretation of the agreements. Not surprisingly, the federal courts have consistently held that *Day* precludes retirees from bringing claims based on disputed interpretations of the collective bargaining agreements in federal court, regardless of whether their disputes originated after their retirement. *See Bloemer v. Northwest Airlines, Inc.*, 401 F.3d 935, 936-37, 939 (8th Cir. 2005) (claim accrued after retirement and court applied *Day* and dismissed for lack of subject matter jurisdiction); *Air Line Pilots Ass'n v. Alaska Airlines*, 735 F.2d 328, 328-29 (9th Cir. 1984) (same); *Bowcock v. Continental Airlines*, 432 F. App'x 343, 345-46 (5th Cir. 2011) (same).

Wyatt also argues that her claims do not require an interpretation of the United-AFA Collective Bargaining Agreement because she was induced to retire by the promises contained in the letter she received from United executive Glenn Tilton, which allegedly promised her permanent highest-priority pass travel benefits. This argument is without merit. It is well settled that an airline may not make individual agreements with employees that supersede the collective bargaining agreement. *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 346-47 (1944).

Finally, Wyatt requests that the court compel arbitration. At this stage, the claim is dismissed under Rule 12(b)(6) for failure to state a claim. As United notes, Wyatt fails to allege that she has presented the dispute to the airline's internal grievance system, a statutory precondition to arbitration under the RLA. 45 U.S.C. § 184. In fact, Wyatt all but concedes she has not done so in her response brief. *See* Response [DE-13] at 14 ([T]here is no supervisor that Wyatt can raise her dispute with [using the internal grievance procedure], and she is in essence a stranger to United at this point . . . ."). The court understands the practical difficulties Wyatt

faces in presenting this dispute internally before requesting arbitration. However, the plain language of the statute and *Day* compel this result. Because Wyatt is an employee under the RLA, she must submit her grievance through the internal grievance process first and then proceed to arbitration. *See Day*, 360 U.S. at 551-53; *Santiago*, 969 F. Supp. 2d at 969 (explaining retiree must exhaust the internal grievance procedure first before court can compel arbitration).

But this cuts both ways. Because the federal courts are closed to Wyatt, United must provide retirees with some method of satisfying the statutory preconditions to arbitration. Of course, the precise parameters of that process should be left to United. However, if Wyatt returns to this court with evidence that United refuses to allow retirees to logistically present their grievances internally, thus rendering the grievance procedure essentially futile to retirees, this court will consider entering an order compelling arbitration. *See Santiago*, 969 F. Supp. 2d at 971 (concluding, in a case with nearly identical facts to this one, "the court believes, in light of the facts and law discussed above, that Santiago is entitled to summary judgment and to an injunction requiring United to submit her grievance to arbitration before the System Board."); *Capraro v. United Parcel Serv.*, 993 F.2d 328, 336-37 (3d Cir. 1993) ("Therefore, if the Adjustment Board were to refuse to entertain Capraro's claim (or if UPS were to refuse to participate in the arbitration proceedings), Capraro would be entitled to a judicial order compelling arbitration.").

In sum, the court concludes that it does not have subject matter jurisdiction over Wyatt's first three claims because they involve interpretations of the United-AFA Collective Bargaining Agreement. With respect to Wyatt's fourth claim requesting an order compelling arbitration, the

9

court also dismisses that claim under Rule 12(b)(6) because Wyatt failed to allege that she pursued the statutorily-required internal grievance procedure (and in fact essentially admitted she had not done so). The claims are all dismissed without prejudice. The first three claims are dismissed without prejudice because the court has concluded that it lacks subject matter jurisdiction over them. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands*, 713 F.3d 175, 185 (4th Cir. 2013). The request for an order compelling arbitration (claim four) is also dismissed without prejudice for the reasons explained above.

## CONCLUSION

United's motion to dismiss [DE-11] is ALLOWED. Each of Wyatt's claims is DISMISSED without prejudice. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This the 13th day of August, 2014.

JAMES C. FOX
Senior United States District Judge